**UNITED STATES of America,**

v.

**Abdul Muqaddim HASAN, Defendant.**

**No. 03 CR. 701(CM).**

United States District Court,
S.D. New York.

Oct. 27, 2004.

Marc O. Litt, New York City, for plaintiff.

## DECISION AND ORDER FINDING DEFENDANT INCOMPETENT TO STAND TRIAL

McMAHON, District Judge.

Defendant stands accused of one count of attempting to defraud a financial institution in violation of 18 U.S.C. §§ 1344 and 2. In brief, on or about May 14, 2003, defendant appeared with two other men at the Newburgh, New York branch of HSBC Bank USA, an insured depository institution as defined in section 3(c)(2) of the Federal Deposit Insurance Act, and sought to open an account. As described to this Court by the Government, Hasan presented to the bank officer what purported to be a United States Treasury instrument in the amount slightly in excess of $199,000,000 (yes, million), which he planned to deposit to set up the account. The bank employee, sensing that perhaps the instrument was not exactly what it purported to be, challenged Hasan regarding the document. Defendant allegedly indicated that he was owed $200,000,000 by the United States Treasury, and this was that amount, less a 5% processing fee. When the bank officer pointed out that the face amount of the instrument was not $200,000,000 less 5%, Hasan purportedly said that he would have to get a new instrument printed up in the correct amount and would return—which he did, on May 16. Secret Service agents were waiting for Hasan when he arrived, and he was placed under arrest after trying to negotiate the "instrument."

From an early point in this case, Hasan exhibited strange behavior. He refused to cooperate with the Federal Defender assigned to represent him and insisted that he was not the defendant in the action. He gave no indication that he understood the charges against him or that he could assist meaningfully in his own defense, although he sought to represent himself (or, more accurately, sought to have the federal defender relieved while *not* representing himself). He talked nonsense when he came to court. Additionally, his daughter (who is not an attorney) and someone named Roy A. Francis (who purports to be a Notary Public in Orange County) [1] began filing papers on defendant's behalf—papers that were at once incomprehensible yet familiar, in that they contained various statements and arguments adopted by a number of defendants in criminal cases in recent years as a tactic to stall and compromise their prosecution, including, *inter alia*, (1) Hasan himself was not the defendant because his name is not

---

1. Mr. Francis may have had something to do with the acts covered by the indictment. See Ex. K to Dalya Hasan's filing with this court dated May 19, 2004.

spelled with all capital letters; (2) ABDUL MUQADDIM HASAN is a corporate fiction; (3) Hasan is a "secured party" and the "principal and authorized representative of debtor;" (4) Hasan, the "private man," is a "third party intervenor" in the instant criminal proceeding; (5) the Assistant United States Attorney on the case was "in default" on something called "Private Conditional Acceptance for Value for Proof of Claim in the Nature of Request for Discovery"; (6) the United States of America, the State of New York and Orange County do not exist, and defendant is accordingly not under their jurisdiction.

On September 16, 2003, the Court, on its own motion, ordered that defendant be examined by a forensic psychiatrist, to determine whether Hasan could understand the nature and consequences of the proceedings against him and assist in his defense. On October 9, 2003, the court received a report from Dr. Robert H. Berger, indicating that defendant was not competent to stand trial. Accordingly, the Court found defendant mentally unfit to proceed, pursuant to 18 U.S.C. § 4241(d), and committed Hasan to the custody of the Attorney General, who was directed to hospitalize defendant for a period not to exceed four months in order to evaluate whether defendant would become capable of standing trial in the foreseeable future. Defendant was sent to FMC Butner in South Carolina.

Upon his return, the Court received a report from a psychiatrist at Butner, Dr. Robert E. Cochrane. Dr. Cochrane concluded that defendant was competent to stand trial. Nonetheless, at the defendant's next subsequent court appearance, he behaved in a more-than-delusional manner, which led me to direct that both examining doctors be brought to the Court for a competency hearing.

The hearing was held on August 4, 2004. The Court heard extensive testimony from both Drs. Cochrane and Berger. Both have impressive professional credentials. Dr. Cochrane holds a PhD in psychology from Wright State University and is board certified in forensic psychology. He teaches at the University of North Carolina at Chapel Hill, one of the country's most distinguished public universities, and is employed at FMC Butner as a forensic psychologist. Dr. Berger, a board-certified psychiatrist, is Clinical Associate Professor of Psychiatry at the New York University School of Medicine and Chief of Forensic Psychiatry at that august institution. He is the former Director of the Division of Forensic Psychiatry at Bellevue Medical Center, and he has been called on to perform psychiatric evaluations by the United States Attorneys for the Southern and Eastern Districts of New York.

Dr. Cochrane opined that defendant was competent to stand trial. He noted that defendant refused to cooperate with any sort of psychological testing (Tr. 12). He appeared medically stable (Tr. 12) and insisted that he had no psychological or psychiatric problems, denying all symptoms of such disorders as depression, mania and anxiety. (Tr. 13). He did not experience hallucinations (Tr. 13).

Dr. Cochrane opined that defendant held certain beliefs (such as his belief that he was owed $200,000,000 by the United States Treasury Department), which would appear on their face to be delusional. However, Dr. Cochrane concluded that defendant was not in fact delusional. Dr. Cochrane noted that he had seen two other cases at FMC Butner during the past year in which individuals professed beliefs similar to those espoused by Hasan. As Dr. Cochrane learned more about this "belief system," he concluded that these beliefs

were held by a number of persons—five or six of whom had been incarcerated at Butner recently. The fact that other criminal defendants espoused the same beliefs was part of the reason why the defendant was not, in his view, incompetent. Some of the information Dr. Cochrane had concerning this matter was imparted to him by an Assistant United States Attorney in New York. (Tr. 15–18).

Dr. Cochrane also concluded that Hasan was not delusional because, when his belief that he was collateral for a Treasury obligation that could be redeemed under the Uniform Commercial Code was challenged over a long period of time, he started to change his opinion that he was in fact entitled to the $200,000,000. Dr. Cochrane characterized flexibility in thinking as a response atypical of people with delusions. (Tr. 19–20, 45). Another datum that factored into his opinion was information given to him by the Assistant United States Attorney on the case—information suggesting that Hasan had "doctored some documents in relation to the criminal charges"—which is not behavior consistent with delusion. (Tr. 20). The fact that Hasan is 60 years old and has no history of mental illness—as described, not only by him, but by members of his family—provided further support for Dr. Cochrane's conclusion, as did the fact that he was able to identify the charge for which he was indicted (bank fraud) and knew that he could go to prison if convicted. (Tr. 21–23). Unfortunately, defendant refused to cooperate with any inquiry into his understanding of how the criminal justice system worked or what options (trial, plea bargain) were available to him. (Tr. 23). He did, however, understand what a prosecutor was, and a defense lawyer, and a judge. (Tr. 24). Defendant's memory appeared intact (Tr. 26); he exhibited familiarity with the particulars of the situation that led to his arrest. (Tr. 24–25). He

also related well to Dr. Cochrane and did not present as someone who was uncomfortable in social settings. (Tr. 27).

Dr. Cochrane summed up his opinion as follows:

> I believe that he doesn't have a mental illness and he's got the capacity to understand the charges and proceedings and to work with his attorney. Do I think he'll do that? Probably not. Based on things he has told me, I have no doubt he's going to be an extremely oppositional defendant, one who will not cooperate . . . ."

(Tr. 27). In response to a question from the Court, Dr. Cochrane further opined that Hasan was capable of representing himself. (Tr. 28).

Dr. Cochrane admitted that he had not come easily to his conclusions. (Tr. 41)

On cross examination, Dr. Cochrane indicated that he was not sure if Hasan could represent himself if in fact he truly believed (as he professed to believe) that this Court had no jurisdiction over him. (Tr. 35). The doctor admitted that Hasan said he had not actually been indicted, because his name was spelled with all capital letters in the caption of the indictment. (Tr. 36). Dr. Cochrane concluded that Hasan did not really believe what he was saying, but his reason for reaching that conclusion was because "[Hasan's] statements were virtually identical to the other defendants with no history of mental illness" (i.e., the people who held to the belief that they were owed money by the United States Treasury for one of any number of ridiculous reasons). (Tr. 38). This, of course, is the information he obtained from the Assistant United States Attorney.

Dr. Cochrane admitted that defendant was not fully cooperative with the evaluation process and did not really open up to

the evaluator, and also that he had not been able to obtain a great deal of collateral data. (Tr. 43–44). Thus, although defendant was at Butner for at least a month, Dr. Cochrane was unable to perform a complete evaluation.

Dr. Cochrane did not know that, after leaving Butner—where he ostensibly changed his mind about being owed money by the Treasury—Hasan filed additional papers with this Court in which he reverted to claiming that he was in fact owed money by the Treasury. (Tr. 44).[2] He did, however, believe that defendant "does not want to be found mentally ill." (Tr. 46).

Dr. Berger, who examined defendant on September 26, 2003, reached a diametrically opposite conclusion after a two and one half hour interview. Dr. Berger diagnosed Hasan as having delusional disorder, paranoid type. (Tr. 66). He concluded that Hasan exhibited a schizotypal personality disorder (which he described as an "eccentric, flaky personality disorder"). (Tr. 50). He believed that Hasan was more vulnerable than the average individual to greater disturbances in his thinking and to deteriorating into episodes or periods of psychosis. And unlike Dr. Cochrane, Dr. Berger saw no evidence of any flexibility in Hasan's thinking or beliefs. (Tr. 58). The circumstances of the charged conduct— including particularly Hasan's belief that he could go into a bank and find a banker who would believe that the Government owed him $199,000,000—indicated that defendant "might see the world a little bit differently than the average person." (Tr. 59). Hasan's belief that he could, when confronted with a discrepancy in his "documentation," call a printer and get corrected documents and bring them back to the bank—a belief upon which he acted, leading to his arrest—was further proof, to Dr. Berger, that Hasan was delusional. Dr Berger opined that Hasan really believed that he was owed and could retrieve an astronomical sum of money in the fashion he attempted. (Tr.59–60).

Dr. Berger knows that there are persons who are attempting to obstruct the criminal justice system and court process by asserting various claims to money from the United States Treasury on the basis of bizarre theories involving commercial law, capitalization and entities. He testified that "there are many people at MCC and MDC" who have this idea, but only a few have been selected by Courts to be evaluated for competency, and that few are characterized by courtroom behavior and actions and ideas "that put them outside of the range of the others." (Tr. 61–62). Dr. Berger opined that, while a majority of such people are simply being obstructionist (Tr. 82), Hasan was not being obstructionist, because he (unlike the obstructionists) really believes these things about the UCC and capital letters, latches onto them and incorporates them into his delusion— the delusion being that he is owed $199 million by the Government. (Tr. 82–83). Dr. Berger intimated (though he did not opine) that the doctors at Butner were too much under the thumb of United States Attorneys. (Tr. 63).

Dr. Berger concluded by opining that defendant could not assist in his defense (I assume either with or without the assistance of counsel), because "his defense strategy and ideas and perspective regarding his case are founded in illogical, false, delusional beliefs ... although he might have a factual knowledge of the charges against him and the proceedings, he does not have a rational understanding of either of these." (Tr. 66). Dr. Berger did not

---

**2.** These papers were in fact filed by Hasan's daughter, Dalya Hasan, not by defendant. Her participation in these proceedings will be discussed below.

believe that Hasan's inability was a consequence of "a voluntary choice not to cooperate." (Tr. 66). Dr. Berger indicated that this type of disorder does not respond well to treatment, but said that Hasan's ability to recover competency would "depend on whether or not treatment were provided to him." (Tr. 67).

On cross, Dr. Berger admitted that Hasan had spoken coherently, had not admitted suffering from any hallucinations and was alert. (Tr. 72). And like Dr. Cochrane, Dr. Berger was also able to get Hasan to bargain down the amount he would take to settle his claim with the Teamsters, from $199 million to $50,000. (Tr. 77).

Ultimately, Dr. Berger's belief that Hasan is incompetent—which is to say, that he really believes that what for others are obstructionist tactics are truths—is grounded in the sheer illogicality of the act for which he stands indicted. (Tr. 84). Like Dr. Cochrane, Dr. Berger stated that Hasan wanted to be found fit and was doing everything in his power to bring about that result. But to Dr. Berger, "[I]t's another example of his illness, because everything he does to show us he doesn't have an illness makes us more convinced that he does." (Tr. 85).[3]

Dr. Berger testified that, since examining defendant, he had received letters and communications from defendant (while he was incarcerated at Butner) and from defendant's daughter and others purporting to speak on defendant's behalf, telling him,

in quasi-legal terms, that he (Dr. Berger) was in default of something. (Tr. 64).[4]

## Subsequent Communications with the Court

Following the hearing, the Court received a long, rambling, hand-written letter from Hasan, in which he made a number of religious arguments concerning the court's jurisdiction and his competency, as well as (1) alleging that consultation with a lawyer in connection with this matter would identify Hasan as a ward of the State and incompetent; (2) alleging that Hasan is not the property of the Government; (3) "accepting" for value the prosecutor's offer and agreeing to perform by going to jail or paying a fine, predicated on proof of the underlying claim; (4) alleging that he was "adducted" (I assume "abducted" is what was intended); and (5) demanding to be released. Hasan's handwritten signature on this document does not match the signature purporting to be his on any of the documents submitted to the court by Dalya or Francis.[5]

Within several days thereafter, the court received a typewritten communication purporting to "expunge" Hasan's latest missive from the record. Attached thereto was a copy of Hasan's letter, with the word "expunged" written on every page. This submission was made by Hasan's daughter Dalya, supposedly acting pursuant to a "power of attorney" she received from her father. (It was pursuant to this "power of attorney" that Dalya has sent numerous

---

**3.** With all respect to Dr. Berger, this testimony has about it the ring of a Catch–22 ("Catch–22). Anyone who wants to get out of combat duty isn't really crazy." *See* Joseph Heller, *Catch–22*, 55 (G. Scribner & Sons 1989) (1955).

**4.** If these letters are identical to those attached as exhibits to Dalya's latest transmission, they come from her as well.

**5.** It is interesting, and perhaps significant, that in a filing made by Hasan with the court in July of this year—including documents typed somewhere other than Valhalla but clearly sent from there (we have the envelopes)—Hasan "revokes" any authority to Francis (actually, revoking Francis's signatures) and declares that all documents filed by Francis in this case are "null and void."

other documents to the court. All such documents have been put in the court file and docketed but will of course not be considered by the court, since this court does not recognize a non-attorney's presentation of papers on behalf of a criminal defendant.)

Most recently, on October 18, I received a letter from Dalya containing an affidavit signed by Dalya (under her "poa") and a letter to me, purportedly signed by defendant (but in fact looking very much like it was signed by Dalya, writing her father's name), complaining about the opening of his "legal mail." [6] This submission illustrates my point about who is making the obstructionist arguments in this case. The letter purportedly written by defendant is dated October 13—the same day that Dalya, who was in Oregon, appeared before a notary public to swear out an affidavit on behalf of her father. Defendant obviously could not have written or signed the letter, and its contents are not attributable to him.

**Conclusion**

■ A criminal defendant may not be tried if he is incompetent. *Godinez v. Moran*, 509 U.S. 389, 396, 113 S.Ct. 2680, 125 L.Ed.2d 321 (1993). The standard for determining competency is twofold: (1) the defendant must have sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding, and (2) the defendant must have a rational as well as factual understanding of the proceedings against him. *United States v. Morrison*, 153 F.3d 34, 46 (2d Cir.1998), *quoting Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960). The court assesses competency under a preponderance of the evidence standard. *United States v. Nichols*, 56 F.3d 403, 410 (2d Cir.1995).

■ Every bit of testimony adduced in this proceeding, from both doctors, indicates that defendant has sufficient present ability to consult with a lawyer with a reasonable degree of rational understanding. Neither doctor had the slightest difficult communicating with Hasan on any subject, and while not everyone would have given some of his answers, there is no indication in the record before me that his answers were not in fact responsive to the questions asked. This means that, to a reasonable degree, he rationally understood what was being said to him and was able to formulate an appropriate (if sometimes factually strange) response. That defendant does not *wish* to communicate with his assigned counsel is clear, but that is a matter of his personal preference. He does not lack the ability to communicate with his assigned counsel—only the will to do so.

■ So the issue I must determine is whether Hasan has a rational as well as a factual understanding of the proceedings against him. That he has a factual understanding is conceded by all parties and confirmed by both examiners. Whether his understanding is rational depends of my assessment of whether he really believes that he is not the defendant in this action, and that the United States does not exist—or, as I said at the competency hearing, whether Hasan is just jerking my chain.

As the court has learned in other lawsuits, there are criminal defendants who will do anything and everything to interfere with the progress of their cases. Examples of the obstructionist ploys current-

---

**6.** Since the mail in question, as shown by Exhibit A attached, is mail between defendant and Dalya—who is not his lawyer, no matter what she and defendant contend—it is not legal mail.

ly in use are for a defendants to claim that the Government does not have jurisdiction over the "person being held by the Government" because that person is really a different entity than the person named in the indictment, and that the jurisdiction of Article III Courts is "statutorily" limited to the "District of Colombia, the Common Wealth of Puerto Rico, Guam, American Samoa and the Virgin Islands." I received documents of this nature from a tax protester defendant, and I expect to see them in the future.

Similar documents are being filed in this case, and they purport to be filed on defendant's behalf. They are not, for the most part, being filed by the defendant. They are not arriving at court from the facility in which Hasan is currently confined. In some cases they do not even appear to have been signed by defendant. Rather, they have been filed by his daughter and Roy Francis. The only letter than can be certified as defendant's own creation is the hand-written letter I received from defendant shortly after the competency hearing—the one that Dalya immediately (and unsuccessfully, since she has not standing to do anything here) tried to "expunge" from the record, no doubt because it suggests that the defendant does not in fact understand what he is up against in this proceeding (which would, of course, have some impact on my finding in this proceeding).

I have no doubt that Dalya Hasan is doing everything in her power to obstruct the instant prosecution, using the tactics about which both doctors testified. But Dalya's actions do not tell me anything about defendant's competency. I need to look to *his* actions. It was defendant's behavior in open court that first gave me pause about his competency, not Dalya's missives. And defendant's behavior—as exemplified by the last letter *he* wrote and sent—continues to concern me.

The Government argues that Hasan must be competent because he knows that this is a criminal proceeding and that he has been accused of bank fraud. The Government is particularly anxious that I give weight to a recently-filed document that, per the Assistant United States Attorney, evidences defendant's understanding of how he might defend against the charge (entrapment, for example, and lack of intent). Unfortunately, the recently-filed document to which the Government alludes was prepared and signed by Dalya Hasan, not defendant, and was sent via Federal Express, which means it came from Dalya and not from defendant (whose prison mailings do not arrive via FedEx). Including in the filing is a statement purportedly signed by defendant last April (as well as by Dalya in her own name). To the extent that the Government relies on this document as proof that defendant himself has the capacity to identify "sting/entrapment" as a possible defense, I note that the document appears to have been typed on the same machine that was used to prepare other documents known to be the work of Dalya, and it is signed by Dalya as well as (ostensibly) by her father. Since I know from perusing other documents submitted by Dalya that she, or Roy Francis, or someone else has signed Hasan's name to other documents (pursuant, I have no doubt, to "powers of attorney" that are of no legal consequence), I cannot be sure that this is defendant's signature. The signature purports to be notarized by someone in North Carolina, where Butner is located and where defendant was located on the April 4, 2004, which is the date that appears on the document. However, another copy of the same documents is not notarized, and purports to be witness by four unknown individuals (Willie Lee Johns, Wallace Culman, Adrian–Jay:

Jaynes and Earl E. Dil), who could be anywhere. All this casts doubt on the provenance of the document and on its reliability as an indicator of *defendant's* (as opposed to *Dalya's*) mental capacity. Documents signed by defendant, but prepared by someone else, tell me very little about defendant's mental state. It is entirely possible that defendant is being used as a tool by, or is under the thumb of, his daughter.

Some of what defendant has said to me does not affect his competence to stand trial. For example: defendant has repeatedly asserted in writing that this court has no jurisdiction over him, and that only Allah, who controls all things, can judge him. He is certainly not the only defendant to say as much in my courtroom, and the fact that he so believes does not mean that he is not competent to stand trial. If all defendant had done was to assert that this court lacked jurisdiction over him, we would not be where we are today.

Defendant has also echoed some of the nonsense found in Dalya's various filings. If defendant really and truly believes that he is not properly before the court because the caption on the indictment uses a particular typeface, then he is not fit to stand trial, because such a belief is on its face irrational—the use of a particular typeface in a caption being nothing more than a stylistic choice, with absolutely no content-based aspect whatever. As I tried to explain to the testifying doctors, I needed them to come to grips with whether Hasan truly believes some of his more bizarre contentions, especially when he insists that he is not the defendant at all. The fact that persons who are demonstrably sane, and who do not believe such nonsense, say things like this as a tactic to delay proceedings is interesting but not dispositive of Hasan's situation. As Dr. Berger noted, many prisoners engage in this sort of behavior; very few, however, behave in a manner so alarming to the trial judge as to lead to a competency proceeding.

Dr. Cochrane thinks that Hasan does not believe what he is saying. But he thinks that largely because he was told by the Assistant United States Attorney about the wider existence of such "views" in the prison population. Indeed, Dr. Cochrane did not form his opinion concerning the defendant's competency until after he spoke to the Government. The Assistant United States Attorney is a fine lawyer, but he is not a doctor, and his views on Hasan's medical condition are of no moment. Moreover, Dr. Cochrane does not seem to have taken into account (and may not have known) of the undeniable fact that nearly all of the nonsense material that fits into the category described to him by the Assistant United States Attorney came from Dalya, not defendant. (The Assistant United States Attorney does not seem to have taken this into account, either).

Dr. Berger, thinks that Hasan does believe what he is saying. But he reaches his conclusion at least in part because Hasan is charged with committing a truly absurd crime. Unfortunately, as the Government points out, the issue is not whether Hasan had the *mens rea* to commit bank fraud. The circumstances alleged in the Indictment are indeed suggestive of mental illness, but plenty of mentally ill people are competent to stand trial.

Perhaps the best indicator of defendant's ability to understand the charges against him and to participate meaningfully in his defense comes from the post-hearing letter from defendant to the court—the letter that Dalya (not Hasan himself) sought to "expunge" from the record. Buried between defendant's paraphrasing of the Qur'an, he sets forth his

purported reasoning for not cooperating with his counsel:

> I the third party intervenor do not wish to consult with a lawyer or attorney because it would grant jurisdiction or would identify me (the third party intervenor) as a ward of the state and incompetent. I do not understand proceedings, I'm not a party to federal social compact (Federal venue). I am not property of Government. Show me the liability to the statute.

The quoted passage provides a glimpse of the "unreasonable world view" that led Hasan to believe that he was owed nearly $200,000,000 from the United States Treasury, could draft a payment order in that amount and deposit it in his name in a Westchester bank. It confirms that defendant does not really understand what is going on, or how this proceeding will be conducted (a matter he refused to discuss with Dr. Cochrane), or what would have to be done to protect his interests.

The typical obstructionist defendant is most often charged with some garden variety criminal offense (ie. failure to pay taxes, firearm violation, drug offence, etc.). In those cases there is nothing about the underlying criminal conduct to suggest that the defendant may harbor an irrational understanding of the judicial process or otherwise be incompetent to stand trial. When such a defendant submits motions and letters similar to those filed by Hasan, it is often quite apparent that the notions expressed in those submissions are nothing more than recent fabrications designed to obstruct the judicial process.

I am advised by the Assistant United States Attorney that other defendants who spout this sort of nonsense have attempted to use phony instruments like the one possessed by defendant to do such things as buy cars. As described, the "instruments" in those cases are in amounts that are capable of defrauding people like car dealers. I asked the Government to cite me to a single instance in which anyone tried to pass an instrument in the amount of almost $200 million to buy a Jeep. I have yet to hear of one.

I, like Dr. Cochrane, have had a great deal of difficulty reaching a conclusion in this matter, given the conflicting expert testimony and the difficulty of sorting out defendant's actions from those of his daughter and Roy Francis. However, based on the record before me, I cannot conclude that it is more likely than not that Hasan has a rational, as opposed to factual, understanding of the charges that he faces and the nature of the proceedings that would have to take place to resolve this charge. He is, therefore, not competent to stand trial at this time.

Because defendant has been found not competent, he is not competent to represent himself. I therefore continue the appointment of the Office of the Federal Defendant (Susanne, Brody, Esq.) for Mr. Hasan.

The parties are directed to appear for a conference on November 5, 2004 at 9 AM., at which time we will discuss where we go from here.